CLARK, C. J., dissenting.
Civil action to require the defendant Board of Elections of Vance County, by writ of mandamus, to tabulate the returns made by the judges and registrars of the several precincts in a primary election held in said county on 1 July, 1922, and then to publish and declare the correct result of said primary election in regard to the nomination of a candidate of the Democratic Party, for the office of register of deeds of said county. The plaintiff duly set out in his petition that, on the face of said returns, he was entitled to be declared the nominee of his party as candidate for the office aforesaid. This was not denied by the defendants, but they contend that on account of certain irregularities occurring in said election, the plaintiff's opponent, Mrs. George T. Buchan, should be declared the rightful nominee.
From a judgment in favor of the plaintiff granting the writ of mandamus
as prayed for, and defendants, having duly excepted, appealed.
On the hearing it was properly made to appear that on 3 June, 1922, an election was held in Vance County, pursuant to article 17, chapter 97, of the Consolidated Statutes, for the purpose of selecting, among others, a nominee of the Democratic Party as candidate for the office of register of deeds of said county. At this election the plaintiff, who, with others, had duly and regularly entered the primary, received a plurality, but not a majority of the votes cast in said contest. Whereupon, Mrs. George T. Buchan, who, as one of the contestants, had received the second highest number of votes for said nomination in the election, requested that a second primary be called and held as she was entitled to do under C. S., 6045. Pursuant to this request, and in accordance with the law pertaining to the subject, a second primary was duly called and held on 1 July, 1922. In this election, according to the returns made by the judges and registrars of the several precincts to the county board of elections, the plaintiff received 1,136 votes, and Mrs. George T. Buchan, his opponent, received 1,134 votes. Upon these returns the plaintiff contends that he is entitled to be declared the nominee of his party as candidate for the office of register of deeds of Vance County, and he brings this action to compel the defendant board of elections to make such publication and declaration, alleging that it is in duty bound so to do under C. S., 6042.
On 3 July, 1922, when the defendant board of elections met in Henderson for the purpose of receiving and tabulating the returns from the several voting precincts of the county, Mrs. George T. Buchan, through her counsel, appeared before said board and asked that she be given an opportunity or time to present affidavits and other evidence tending to show certain irregularities, prejudicial to her and affecting the result of said election adversely to her nomination. The board granted this request, over the objection of the plaintiff, and took a recess or adjournment to meet again on Saturday, 8 July. At this meeting Mrs. Buchan presented the charge and complaint, supported by affidavits, that five illegal votes had been cast for the plaintiff in said election. The ground of said charge or complaint chiefly being that the electors in question did not, and did not intend to, affiliate with the Democratic Party. Upon this showing, she asked that these votes be eliminated from the count, and that she be declared the rightful nominee by a majority of 3 votes. The plaintiff, through his counsel, demurred to this proceeding, and demanded that the result be declared according to the official returns. A further adjournment was taken until 11 July, 1922, at which time the defendant board of elections, being of opinion that it had the power and authority to pass upon the legality of these alleged illegal ballots, proceeded to hear evidence tending to show the disqualification of five electors who voted in the election, and, upon the evidence presented, the *Page 81 
said board concluded that the true and correct returns in this second primary should have been 1,134 votes for Mrs. Buchan and 1,131 votes for the plaintiff. The defendant board of elections thereupon undertook to change the returns to the extent indicated, and to declare Mrs. Buchan the nominee of her party as candidate for the office of register of deeds for Vance County.
The illegality of the five votes, which were in question before the county board of elections, is not admitted by the plaintiff, but he is here in this proceeding denying and challenging the power and authority of the defendant board to hear and to determine any such controversy. This is the only question before us for decision.
Clearly, if said board has exceeded its authority, the plaintiff is entitled to the relief sought. Such was the effect of our holding inJohnston v. Board of Elections, 172 N.C. 162. From a perusal of the statutes on the subject, we think it is manifest that the county boards of elections have been vested with ministerial or administrative powers only, which consist of tabulating the returns in primary elections and forwarding same to the State Board of Elections, in instances where such is required, and, in case of nominations for county offices, forthwith in publishing and declaring the results, C. S., 6042. These returns may not be altered or changed by the county boards of elections unless there has been some error in addition or in filling out the blanks on the part of the judges and registrars in one or more of the several precincts, in which event they "shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results." C. S., 6048.
With respect to the wisdom or impolicy of giving the county boards of elections the same power over the returns in primary elections as they have over the returns in a general election, we are not called upon to decide or to express any opinion. This is a question of policy which the Legislature alone may consider. Suffice it for us to say that, as the law is now written, no such power is vested in the county boards of elections in regard to the returns made by the judges and registrars of the several precincts in a primary election. On the contrary, such powers and duties appear to have been purposely withheld from said boards, and this evidently for reasons which seem to partake of the better part of wisdom. Finality in these matters must reside somewhere, and, under the primary law, by the express terms of the statute, the duty of passing upon the qualifications of those offering to vote in a given election has been vested in the local registrars and judges of election. C. S., 6031. No power of review, or other judicial authority, in primary elections, has been lodged in the county boards of elections.
This question was discussed by Hoke, J., in Brown v. Costen,176 N.C. 66, from which we quote with slight variations to fit the *Page 82 
particular facts in hand. The Legislature did not, and did not intend to, vest the county boards of elections with power to enter upon an investigation of this character, but has referred the question chiefly involved, the right of an applicant to vote in the primary, to the decision of the election boards at the various precincts. The right to vote in a primary election, under express statutory provision, has been made to depend not only upon the applicant's status as a legal voter, but also upon his bona fide intent to affiliate with the party holding the primary. The law provides for the appointment of a registrar and judges of election in each precinct, who are required to act under the sanction of an official oath, and they may be indicted for willful neglect or failure to perform their duties properly. Also, at the request of the chairman of any political party, provision is made for the selection of some elector of that party to attend and to witness the conduct of the primary as an additional guarantee of fair play.
After a careful consideration and full debate of the question, the Legislature may have concluded that these local boards, or poll-holders, constitute the best tribunal that could be devised for determining the qualifications of a proposed voter. It may have considered, too, that, in an effort to ascertain the general expression of party electors in a legalized primary, it was well-nigh impracticable to enter upon an extended investigation of this kind before the county boards of elections, or any other tribunal, and have the same determined satisfactorily and in time to announce the rightful candidate before the general election. Of course, if a small number of votes may be challenged, then all may be challenged and the whole election may be called in question.
But whatever considerations may have brought about the exact provisions of the primary law, it is stipulated in express terms (C. S., 6031) that, when the right of a proposed elector to vote in the primary of any party is challenged upon the ground that he does not affiliate with such party, or does not in good faith intend to support the candidates nominated in said primary, his qualification and right to vote shall be referred for determination to the precinct registrar and judges of election.
Thus, the matter having been committed to these local or precinct boards, and no power being conferred on the county boards of elections to supervise or to review their findings, except in case of "errors in tabulating returns or filling out blanks," we must hold that the action of the defendant county board of elections in the instant case in undertaking to change the returns was without warrant of law, and that the plaintiff is entitled to have the same tabulated and the result forthwith published and declared. Moore v. Jones, 76 N.C. 182. *Page 83 
The suggestion that certain provisions of the general election law have been incorporated in and made a part of the primary law, giving the county boards of elections larger powers than above indicated, is without material significance on the present record, for, in those cases where this occurs, it is provided that such references shall have effect only when not inconsistent with the terms of the primary law itself. "Unless otherwise provided herein" is the language of the statute. The above provisions are clear and unambiguous; they have but little ground for construction or interpretation.
On the record, plaintiff is entitled to the relief sought, and hence the judgment must be upheld.
Affirmed.