JOHN C. BELL v. COUNTY BOARD OF ELECTIONS OF
BERTIE COUNTY.

(Filed 1 October, 1924.)

**1. Elections—Primaries—Statutes.**

In primary elections the return for county officers must be certified as
the statute requires to the county board of elections, which shall publish
the result (C. S., 6032, 6336), the distinction between elections of this
character and general elections being that in the former there is no right
to an election to public office which may be put in issue and determined
by *quo warranto*, and no provision for a board of canvassers with power
judicially to determine the precinct return.

**2. Same—Ministerial Duties—Mistakes—Corrections.**

In primary elections for county officers the registrar and judges of
election are authorized not only to pass upon the qualification of voters
therein, but to determine whether a ballot found in the wrong box was
placed there by mistake, and, if satisfied of the mistake, to count the
ballots for the one for whom they had been cast, in making their returns
to the county board.

**3. Same — County Board of Elections — Continuing Judicial Duties—
Functus Officio.**

In a primary for county officers the registrar and judges of election
have the sole power, acting in their ministerial capacity, to determine
whether votes cast in the wrong ballot box should be counted; and they
may correct their tabulation of the results thereof to the county board
of elections before the latter has judicially determined the results; the
duties of the latter board being continuous, under the provisions of the
statute, and such powers not being *functus officio* until they have finally
determined the results of the election. C. S., 5924, *et seq.*

**4. Same—Mandamus.**

Where the powers of the county board of elections are not *functus
officio*, they may be compelled by mandamus to act upon the correction
of a mistake made by the registrar and judges of election, and its certifi-
cate correcting it, in allowing a candidate votes cast for him, but in the
wrong ballot box.

APPEAL by defendant from *Midyette, J.* From BERTIE.

In the Democratic primary held in Bertie County on Saturday,
7 June, 1924, the plaintiff and Roscoe V. Peele were candidates for
nomination for the office of county treasurer. After the polls had been
closed the registrar and judges of election in Colerain Precinct No. 1
in counting the ballots found two which had been cast for the plaintiff
and deposited in the box provided for State officers instead of the box
provided for county officers. The registrar and judges of election threw
out these two ballots because they concluded as a matter of law that
they had no right to count them. They afterwards discovered their
mistake, and signified their readiness to count the two omitted ballots

and to amend their returns. The county board of elections refused to receive such amended returns, and the plaintiff thereupon applied for a writ of mandamus to require the board to reassemble and accept the amendment.

Judge Midyette found the facts to be as follows:

1. That the plaintiff, John C. Bell, and Roscoe V. Peele duly qualified as the only two candidates in the primary election held in Bertie County on Saturday, 7 June, 1924, for the Democratic nomination for the office of county treasurer of said county.

2. That in Colerain Precinct No. 1, in said county, when the polls had been closed, and the registrar and judges of election came to count the ballots deposited in the various boxes, there were found two ballots cast for plaintiff, John C. Bell, but deposited in a box other than that provided for ballots for county officers, to wit, in the box provided for ballots for State officers; that the said registrar and judges of election, under the impression that, as a matter of law, the said ballots could not be counted because found in the wrong box, threw out the ballots and did not count them, and in making their returns did not include the said ballots in the number of votes returned as cast for the plaintiff, John C. Bell, the returns as made to the proper board and official showing 96 votes for John C. Bell and 47 votes for Roscoe V. Peele, whereas had said two votes been counted the returns would have shown 98 votes cast for said John C. Bell, instead of 96 as returned.

3. That on 9 June, 1924, the county board of elections, composed of H. G. Harrington, chairman, C. W. Mitchell, Jr., and J. C. Davidson, assembled to tabulate the returns from the various precincts of Bertie County, and this matter was called to the attention of the said chairman, H. G. Harrington, after the board adjourned, whereupon the said chairman agreed that plaintiff might have time to present affidavits showing the facts as stated, and on 13 June, before the tabulation of the votes had been signed the registrar and judges of election of said Colerain Precinct No. 1, in said county, formally and in writing made affidavit to the facts hereinbefore recited, and requested that they be permitted to amend their return so as to count the said two ballots for John C. Bell, and include same in their returns, because satisfied that they were placed in the wrong box by mistake.

4. That on 13 June, 1924, and within five days of the tabulation of said returns, and before any notice of said results had been given formally to the plaintiff, the said plaintiff made formal demand in writing that he be declared the nominee for the office of county treasurer upon the ground that a correct count of ballots which should have been counted would show that he had received a majority; and also demanding that a second primary be held upon the ground that his opponent had not received a majority of the votes legally cast and counted.

5. That notwithstanding the requests of the registrar and judges of election of Colerain Precinct No. 1, and of plaintiff, the defendant chairman of the county board of elections has refused and failed to call a meeting of the said county board of elections, and has failed and refused to afford the registrar and judges of election of Colerain Precinct No. 1 the opportunity to amend their returns as requested, and has failed and refused to take any action or steps whatsover in the premises.

6. That in Roxobel Township Precinct six ballots cast had printed thereon, in addition to the matter prescribed legally for such ballots, the words "Aulander Advance Print"; that four of these ballots were cast for Roscoe Peele and two thereof for John C. Bell; that when these ballots were found they were taken out and placed in an envelope, not counted, but brought with the returns to the county board of elections on 9 June, 1924, the said returns not including the said six ballots; that the said registrar and judges of election left it with the said county board of elections to determine whether these six ballots with the words "Aulander Advance Print" were official ballots; that thereupon the said registrar and judges of election of Roxobel Township Precinct changed the returns so as to include the said six ballots, and on 9 June, 1924, the registrar and one of the judges of election, in the absence of the other and not in any regular meeting, changed the returns of this precinct, and including these six ballots, and without such change the election in the county would have been at least a tie; and later on 10 June, 1924, after the meeting of board of county elections, the other judge, Owen G. Auston, signed said returns, and on the bottom of these six ballots and on the same side names of candidates were printed, it is admitted, were printed the words "Aulander Advance Print"; that these ballots on which appeared the words "Aulander Advance Print" contained the name of the Democratic candidate for the legislature and the various county officers, including that of treasurer.   These six ballots the court finds were distributed with large number of similar ballots by county board of elections.   Ballots not containing this language were distributed in other precincts; that the original returns of the registrar and judges of election of Roxobel Township Precinct were filed with the clerk of the Superior Court on 9 June, 1924, by C. L. L. Cobb, registrar, and B. E. Burkett, judge of election; and later, on the same day, the said Cobb and Burkett, in the presence of H. G. Harrington, withdrew the said returns from said clerk's office to make some change, and a day or two later another original return of said Roxobel Township Precinct was received by said clerk through the mail.

8. That the abstract of votes for county officers cast in said primary on 7 June was filed in the office of the clerk of the Superior Court of Bertie County on 14 June, 1924, and such abstract showed 1,133 votes

for Roscoe V. Peele and 1,131 votes for John C. Bell, which tabulation and count excluded the two votes in Colerain Precinct No. 1 cast for John C. Bell, but not counted because found in the wrong box as aforesaid, and also included the six votes cast in Roxobel Township Precinct with the words "Aulander Advance Print" thereon, four for Roscoe V. Peele and two for John C. Bell.

9. That the returns made to the board of elections by the registrar and judges of elections of the various townships were regular upon their face and showed none of the alleged irregularities set out in the complaint.

10. That the petition from the registrar and judges of election from Colerain Precinct No. 1 to be permitted to amend their returns as heretofore recited, and exceptions to the counting of six votes from Roxobel Precinct, were both made before the results of the primary election had been published.

Upon these facts the following judgment was rendered:

In this cause considered upon application for writ of mandamus, and upon facts found at request of defendants, it is ordered, adjudged and commanded that the defendant county board of election shall forthwith reassemble, permit said registrar and judges of election of Colerain Precinct No. 1 to amend their returns as requested, should said registrar and judges of election so elect, and if no aspirant for the nomination for county treasurer of Bertie County shall have received a majority of the votes, then to call a second primary for such nomination as prescribed by law. The court, upon application of Roscoe V. Peele, makes him a party hereto.

It is further ordered that certified copies of this order to be made by the clerk of the Superior Court of Bertie County shall be served by the sheriff of said county upon the county board of election of said county and each member thereof forthwith. And also the clerk will copy and certify the findings of fact, and they shall also be served on said board by sheriff.

The defendants excepted and appealed.

*George C. Green for appellants.*
*Stephen C. Bragaw for appellee.*

ADAMS, J. In primary elections the returns for county officers must be certified as provided to the county board of elections, who shall declare and publish the result. C. S., 6032, 6036. On the day the returns from Colerain Precinct No. 1 were certified, the chairman of the board of elections, after the board had adjourned, but before the abstract had been signed, consented that the plaintiff should have an opportunity to present affidavits in reference to the two contested votes.

Four days afterwards the registrar and judges of election offered such proof, but it was not accepted or considered by the board.

The county board of elections filed the abstract of votes for county officers in the clerk's office on 14 June, and the defendants contend that after the discharge of this duty the board was *functus officio*. It is true that a ministerial agency which has served the purpose of its creation is generally treated as devoid of further force or virtue; but the question is whether the board had fulfilled its function at the time the registrar and judges of election requested the privilege of correcting the error in their returns. Such request was made before the result was declared, and before the abstract was filed with the clerk or even signed by the board.

In considering the question we may avoid confusion by noting the duties required of election officers and the distinction between general elections and primary elections. In the primary there is no election to public office, the right to which may be put in issue and determined by *quo warranto,* and no provision for a board of canvassers clothed with power judicially to determine the precinct returns. C. S., 5984 *et seq.;* 6018 *et seq.; Britt v. Board of Canvassers,* 172 N. C., 797. The officers chiefly concerned with the primary are the election boards, the registrars, and the judges of election, whose several duties are prescribed by statute. The registrar and judges of election are authorized, not only to pass upon the qualification of the voter, but finally to determine whether a ballot found in the wrong box was placed there by mistake and, if satisfied of the mistake, to count the ballot in making their returns to the county board; for in section 6020 it is provided that primary elections shall be conducted as nearly as may be in accordance with the general election law, and between section 5983 and section 6020 we find no fatal conflict or inconsistency. And the determination of these matters involves the exercise of judicial functions. *Rowland v. Board of Elections,* 184 N. C., 78; *Brown v. Costen,* 176 N. C., 63. But in these cases it is likewise held that the powers vested in the county board of elections are not judicial, but ministerial. While the board acts in an administrative capacity, its office is not discharged by merely tabulating the returns and declaring the result. Its organization is not dissolved in this manner, for it is not the creature of a day. It is composed of three persons, whose term of office continues for two years from the time of their appointment and until their successors are appointed and qualified, and it is organized by the election of designated officers. C. S., 5924 *et seq.*

In our opinion the cases relied on by the defendant are not in conflict with this position, for the reason that the facts therein stated and the statutes therein construed were not similar to those in the case at bar.

In *O'Hara v. Powell,* 80 N. C., 104, the decision turned upon the act of 1876, which required the board of county commissioners to meet on the second day after the election, to canvass the returns, and to make abstracts of the votes; and the Court held that the board "dissolved its organization" by adjourning after the completion of its work. And in *Swain v. McRae,* 80 N. C., 111, the plaintiff's action, brought to compel the county commissioners to reassemble and recount the vote, presented the anomalous case of an incumbent who held over after the expiration of his office and sought to prevent the induction of the successful candidate until the vote should be recounted under the direction of the court. Neither case sustains the position that the county board of elections was *functus officio* at the time the present action was instituted.

Citing *Britt v. Board of Canvassers, supra,* the defendants say, in the next place, that mandamus can be issued to enforce the performance only of such ministerial duty as presently exists and that the writ, if granted in this case, will compel the board of elections "to set aside a decision already made." In *Britt's case* it was said that as the board of canvassers was vested with power judicially to pass upon all matters relating to the election its discretion could not be supervised by the courts, but that the performance of a ministerial duty could be enforced by mandamus. The county board of elections in tabulating the returns acted in a ministerial capacity, and did not render a judicial decision. As we have said, it is the action of the registrar and judges of election, when taken in the respects pointed out, that is not subject to judicial control. These officials were the sole judges of the questions whether the ballots were put in the wrong box and whether they were cast for the plaintiff, and having resolved both questions in favor of the plaintiff they should be granted the privilege, not to change the vote of any elector, but to correct an error which, if uncorrected, will deprive a condidate of ballots to which he is justly entitled.

We find no error, and the judgment is

Affirmed.